*In re* José A. Feliciano Rodríguez.

*Número:* CP-1999-010     *Resuelto:* 26 de abril de 2000

*José F. Rodríguez Rivera*, Comisionado Especial, en informe; *Carlos Lugo Fiol, Procurador General*, e *Yvonne Casanova Pelosi, Procuradora General Auxiliar*, abogados de El Pueblo; *José A. Feliciano Rodríguez, pro se.*

PER CURIAM:

## I

El Sr. José Torres Otero (en adelante el querellante) contrató al Lcdo. José A. Feliciano Rodríguez (en adelante el querellado) para que autorizara la Escritura de Compraventa Núm. 25 de 15 de julio de 1993, mediante la cual el querellante le compraba una propiedad a la sucesión de Primo Vega. De la escritura surgía que la propiedad tenía una deuda contributiva de cuatro mil dólares ($4,000), cantidad que le fue entregada al querellado para que se hiciera cargo de saldarla. Autorizada la escritura, el querellante acudió al Departamento de Hacienda para solicitar la exención contributiva sobre dicha propiedad. Su solicitud fue denegada por subsistir en el Centro de Recauda-

ción de Ingresos Municipales (en adelante el C.R.I.M.) la deuda contributiva vigente al día de la compraventa. El quejoso intentó infructuosamente comunicarse con el querellado en diversas ocasiones. No fue hasta el 10 de julio de 1998 —aproximadamente cinco (5) años más tarde— que el querellado le restituyó al querellante dicho pago.

A raíz de ello, el 11 de mayo de 1999, el Procurador General formuló una querella contra el Lcdo. José A. Feliciano Rodríguez, en la cual le imputó los cargos siguientes:

### CARGO I

El Lcdo. José A. Feliciano Rodríguez violentó los principios establecidos por el Canon 18 de Ética Profesional el cual, entre otras cosas, obliga a todo abogado a ejercer su profesión con celo, cuidado y diligencia.

### CARGO II

El Lcdo. José A. Feliciano Rodríguez violentó los principios establecidos por el Canon 23 de Ética Profesional el cual, entre otras cosas, obliga a todo abogado a dar pronta cuenta del dinero u otros bienes de su cliente y a no mezclarlo con sus propios bienes o permitir que se mezclen.

### CARGO III

El Lcdo. José A. Feliciano violentó los principios establecidos por el Canon 38 de Ética Profesional el cual, entre otras cosas, obliga a todo abogado a preservar el honor y la dignidad de la profesión legal. Querella, pág. 1.

El 7 de septiembre de 1999, el querellado contestó la querella presentada en su contra. Referimos el caso al Hon. José F. Rodríguez Rivera para que, en calidad de Comisionado Especial, escuchara y recibiera la prueba y preparara el informe correspondiente. Examinados los informes presentados por el Comisionado Especial[1] y las

---

[1] Se titulan "Informe del Comisionado Especial" presentado el 3 de enero de 2000, notificado el 11 de enero de 2000, e "Informe Suplementario del Comisionado Especial para Resolver Solicitud de Determinaciones de Hechos Adicionales", presentado el 1ro de febrero de 2000, notificado el 22 de febrero de 2000.

comparecencias del Procurador General en torno a éstos,([2])
procedemos a resolver.

## II

Se desprende del Informe del Comisionado Especial
que: (1) el querellado se comprometió a acudir al C.R.I.M. a
averiguar el monto de la deuda contributiva y a saldarla,
razón por la cual le fue entregada la suma de cuatro mil
dólares ($4,000); (2) el querellante visitó en varias ocasio-
nes la oficina del querellado sin obtener resultado alguno;
(3) no fue hasta julio de 1998 que el querellado le reem-
bolsó al querellante la suma retenida; (4) a preguntas del
querellado, la Sra. Ángela Montes —quien había sido su
secretaria legal hasta 1996— aceptó haberle entregado al
querellado los mensajes sobre las visitas del querellante a
su oficina; (5) el querellado aceptó no haberse comunicado
con el querellante, mas sin embargo adujo no recordar si
éste le dejó su número telefónico; (6) alegó, además, haber
sufrido una crisis emocional debido a diversas razones,([3])
entre ellas: que estuvieron hospitalizados él y su hija, que
fue víctima de la incompetencia y falta de cooperación de
su socio, que tuvo problemas matrimoniales.([4]) El quere-
llante atestó que, a pesar de sus visitas y llamadas telefó-
nicas al querellado, nunca fue informado de su alegada
enfermedad.

---

([2]) El Procurador General replicó a ambos informes mediante "Moción" y "Co-
mentarios En Torno Al Informe Del Honorable Comisionado Especial", el 19 de enero
y el 28 de febrero de 2000, respectivamente. El querellado no presentó objeción a los
informes del Comisionado Especial.

([3]) Por las cuales no advino en conocimiento de la querella presentada en su
contra hasta finales del 1996.

([4]) Alegadamente se separó de su esposa.

## III

El Canon 18 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, le impone a los abogados la obligación de ejercer su profesión con celo, cuidado y diligencia. En lo pertinente, establece que:

[e]s deber del abogado defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable.

Por su parte, el Canon 23 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, dispone lo siguiente con respecto al manejo de los bienes del cliente:

[e]l abogado no debe adquirir interés o participación alguna en el asunto en litigio que le haya sido encomendado.

Un abogado no debe adelantar o prometer ayuda financiera a su cliente para gastos médicos o subsistencia, excepto que puede adelantar el pago de las costas del litigio, y los gastos de investigación y de exámenes médicos necesarios para representar debidamente el caso de su cliente.

La naturaleza fiduciaria de las relaciones entre abogado y cliente exige que éstas estén fundadas en la honradez absoluta. En particular, debe darse pronta cuenta del dinero u otros bienes del cliente que vengan a su posesión y no debe mezclarlos con sus propios bienes ni permitir que se mezclen.

Sobre el particular, en *In re Ramírez Ferrer*, 147 D.P.R. 607, 613 (1999), sostuvimos que " 'la confianza entre abogado y cliente, en particular, el escrupuloso manejo de fondos, constituye elemento inseparable que se proyecta no sólo dentro del foro togado puertorriqueño, sino en el respeto y la estima ante la imagen pública' ". (Citas omitidas.)

Allí aclaramos que el hecho de haber devuelto el dinero retenido o haberlo retenido sin la intención de apropiarse de él permanentemente no libera al abogado querellado de una posible sanción disciplinaria. Por el contrario,

" '[l]a dilación en la devolución de los fondos de por sí es causa suficiente para tomar medidas disciplinarias contra el abogado' ". (Citas y énfasis suprimidos.) *In re Ramírez Ferrer*, supra, pág. 615.

■ Tal comportamiento constituye un grave atentado a la relación fiduciaria entre abogado y cliente. *In re Ramírez Ferrer*, supra.(⁵) En *In re Gorbea Martínez*, 149 D.P.R. 784, 788 (1999), expusimos que "[el Canon 23] [c]lara y diáfanamente prohíbe *la retención y disposición inapropiada de cualquier suma de dinero pertenecientes* [sic] *a los clientes*". (Énfasis en el original.)

■ En relación al deber de preservar el honor y la dignidad de la profesión, el Canon 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, establece, en lo pertinente, que:

> [e]l abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia ....
>
> Por razón de la confianza en él depositada como miembro de la ilustre profesión legal, todo abogado, tanto en su vida privada como en el desempeño de su profesión, debe conducirse en forma digna y honorable ....

■ En *In re Ramírez Ferrer*, supra, pág. 616, reiterando a *In re Coll Pujols*, 102 D.P.R. 313, 319 (1974), indicamos que " '[c]ada abogado es un espejo en que se refleja la imagen de la profesión. Sus actuaciones reflejan ante la comunidad las bases del concepto que ésta se forme, no solamente del abogado en particular que actúa, sino también de la clase profesional toda que debe representar con limpieza, lealtad, y el más escrupuloso sentido de responsabilidad' ".

---

(⁵) Véanse, además: *In re Rivera Carmona*, 114 D.P.R. 390 (1983); *In re Arana Arana*, 112 D.P.R. 838 (1982).

Pasemos ahora a aplicar las normas antes expuestas al caso ante nuestra consideración.

## IV

Ciertamente, el comportamiento del querellado de retener indebidamente —durante aproximadamente cinco (5) años— cuatro mil dólares ($4,000) pertenecientes a su cliente, sin realizar la gestión a la cual se comprometió, constituye una flagrante violación a los Cánones 18, 23 y 38 del Código de Ética Profesional, *supra.* Este proceder mancilla inaceptablemente la imagen de la profesión y menoscaba la relación fiduciaria entre abogado y cliente. Lo anterior es suficientemente reprochable como para justificar la suspensión indefinida e inmediata del querellado del ejercicio de la abogacía.[6]

Por los fundamentos esbozados, *suspendemos indefinida e inmediatamente del ejercicio de la abogacía a José A. Feliciano Rodríguez, a partir de la notificación de esta opinión, y le imponemos el deber de notificar a todos sus clientes de su presente inhabilidad de seguir representándolos, les devuelva cualesquiera honorarios recibidos por trabajos no realizados, e informe oportunamente de su suspensión a los distintos foros judiciales y administrativos del país. Deberá, además, certificarnos dentro del término de treinta (30) días a partir de su notificación el cumplimiento de estos deberes, notificando también al Procurador General.*

*Se dictará sentencia de conformidad.*

La Juez Asociada Señora Naveira de Rodón limitaría la

---

[6] Cabe señalar que en el caso Núm. TS-3317, mediante la opinión *per curiam* de 11 de diciembre de 1998, suspendimos al Lcdo. José A. Feliciano Rodríguez únicamente del ejercicio de la notaría, por el término de tres (3) meses, contados a partir de su notificación el 15 de diciembre de 1998 y hasta que otra cosa dispusiera este Tribunal. Dicho término venció el 15 de marzo de 1999. El 7 de septiembre de 1999, el querellado solicitó su reinstalación al ejercicio de la notaría, asunto pospuesto hasta tanto resolviéramos el caso de autos.

suspensión a un (1) año. El Juez Asociado Señor Fuster Berlingeri no intervino.